IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| CRAIG MATTHEWS, SUBSTITUTE PARTY FOR LAURA LEE MATTHEWS, | ) ) ) | Civil No. 09-184-JE |
| Plaintiff, | ) ) | FINDINGS AND RECOMMENDATION |
| v. | ) ) | |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

Rory Linerud
Attorney at Law
P.O. Box 1105
Salem, OR 97308

Attorney for Plaintiff

FINDINGS AND RECOMMENDATION - 1

Dwight C. Holton
Acting U.S. Attorney
Adrian Brown
Asst. U.S. Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Kathryn A. Miller
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

       Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Craig Matthews brings this action on behalf of Laura Matthews (the claimant), his deceased wife, pursuant to 42 U.S.C. § 502(g), seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying a portion of Laura Matthews' claim for disability benefits under the Social Security Act (the Act). Plaintiff seeks an Order remanding this action to the Social Security Administration (the Agency) for an award of benefits from October 1, 2004, to August 1, 2005. For the reasons set out below, the decision of the Commissioner should be affirmed.

**<u>Procedural Background</u>**

Claimant filed an application for a period of disability and disability insurance benefits on February 24, 2006, alleging that she had been disabled since April 20, 2002. The claim was denied initially on June 1, 2006.

Plaintiff moved for reconsideration of that decision. On reconsideration, in a decision dated November 11, 2006, the Agency found that Ms. Matthews was disabled as of August 1,

FINDINGS AND RECOMMENDATION - 2

2005.  Ms. Matthews appealed the Reconsideration Order granting her benefits, alleging that she had become disabled at an earlier date.

On December 29, 2006, while her appeal was pending, Ms. Matthews passed away. On January 16, 2008, plaintiff Craig Matthews, plaintiff's widower, was substituted as a party in place of Ms. Matthews.

A hearing on Mr. Matthews' claim was held before Administrative Law Judge (ALJ) Jean Kingrey on May 12, 2008.  Plaintiff and Tamara Brown, Ms. Matthews' sister-in-law, testified at the hearing.  Patricia Ayerza, a Vocational Expert (VE), appeared but did not testify.  The VE did not testify.  Following the hearing, plaintiff requested amendment of the alleged onset of disability date to October 1, 2004, and requested a closed period of disability from that date until August 1, 2005, the date upon which, on reconsideration, Ms. Matthews had been found to have been disabled.

In a decision dated August 12, 2008, the ALJ found that Ms. Matthews had not been disabled at any time during the period for which additional benefits were requested.  That decision became the final decision of the Commissioner on December 12, 2008, when the Appeals Council denied plaintiff Matthews' timely request for reconsideration.  In the present action, plaintiff seeks review of that decision.

**Factual Background**

Ms. Matthews was born on May 2, 1958, and was 47 years old on the date of her alleged onset of disability.  She was diagnosed with hairy cell lymphoma in early 2001, and underwent chemotherapy treatment.  The lymphoma went into remission, and Ms. Matthews worked until approximately April of 2002.  In August, 2005, plaintiff reported fatigue to her

doctor.  In November, 2005, she was seen for a chronic cough associated with hemoptysis.

Non-small cell carcinoma of the right lung was confirmed by a biopsy performed in

December, 2005.  Ms. Matthews also had chronic obstructive pulmonary disease.

 Ms. Matthews had past relevant work experience as a pharmacy technician.


### <u>Disability Analysis</u>

 The ALJ engages in a five-step sequential inquiry to determine whether a claimant is

disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a

summary of the five steps, which also are described in <u>Tackett v. Apfel</u>, 180 F.3d 1094,

1098-99 (9th Cir. 1999).

 <u>Step One</u>.  The Commissioner determines whether the claimant is engaged in

substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the

claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate

the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

 <u>Step Two</u>.  The Commissioner determines whether the claimant has one or more

severe impairments.  A claimant who does not have such an impairment is not disabled.  If

the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case

under Step Three.  20 C.F.R. § 404.1520(c).

 <u>Step Three</u>.  Disability cannot be based solely on a severe impairment; therefore, the

Commissioner next determines whether the claimant's impairment "meets or equals" one of

the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.

A claimant who has such an impairment is disabled.  If the claimant's impairment does not

meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(e).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

### ALJ's Decision

At the first step of her analysis, the ALJ found that Ms. Matthews had not engaged in substantial gainful activity at any time from October 1, 2004, to August 1, 2005, the period for which plaintiff sought benefits.

At the second step, the ALJ found that Ms. Matthews' lung cancer and leukemia in remission had been severe impairments during the October 1, 2004 to August 1, 2005 period.

At the third step, the ALJ found that, during that period, Ms. Matthews did not have an impairment or combination of impairments that met or equaled any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (the Listings).  The ALJ then determined that, during the period for which plaintiff seeks benefits here, Ms. Matthews had the residual functional capacity necessary to perform a full range of sedentary work.  At step four of her analysis, the ALJ concluded that Ms. Matthews was unable to perform any of her past relevant work from October 1, 2004, to August 1, 2005.

At step five, the ALJ found that, considering her age, education, work experience, and residual functional capacity, from October 1, 2004, through August 1, 2005, Ms. Matthews could have performed jobs that existed in significant numbers in the national economy. Accordingly, she found that Ms. Matthews had not been disabled during that period.

In reaching her conclusions, the ALJ stated that the testimony of the lay witnesses, which included plaintiff and Ms. Matthews' sister-in-law, was "extremely vague" as to the "timeframes" during which Ms. Matthews was reportedly extremely fatigued and unable to sustain significant activities.

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

**Discussion**

Plaintiff contends that the ALJ erred in concluding that Ms. Matthews was not disabled by October 1, 2004, concluding that Ms. Matthews retained the functional capacity required to perform the full range of sedentary work until August 1, 2005, concluding at step

five of her analysis that plaintiff could perform jobs that existed in substantial numbers in the national economy, and in rejecting the lay testimony presented at the hearing before the ALJ.

Based upon a careful review of the ALJ's decision and the relevant portions of the record, I disagree with plaintiff.

1. ALJ's Analysis of Onset of Disability Date

Plaintiff contends that the ALJ failed to properly consider medical evidence supporting the conclusion that Ms. Matthews became disabled by October 1, 2004.  He particularly asserts that the ALJ failed to properly consider evidence that Ms. Matthews had a chronic cough "as far back as the alleged onset date of October 2004."

The Commissioner correctly notes that the question here is not whether the ALJ could have reasonably chosen a different onset of disability date, but whether her conclusion that Ms. Matthews became disabled as of August 1, 2005, was supported by substantial evidence. E.g., Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  Certainly, there is evidence that plaintiff had a chronic cough that had persisted during the year before she was diagnosed with lung cancer.  However, as the Commissioner notes, Dr. Theodore Braich, Ms. Matthews' treating physician, reported that Ms. Matthews' principal complaints related to her ongoing treatment for her hairy cell lymphoma, which had been in remission since 2002.  Though plaintiff mentioned a chronic cough in a visit to Dr. Braich in January, 2005, Dr. Braich noted that plaintiff's lungs were clear, and no further mention of a chronic cough was made during the period for which benefits are now sought.  The Commissioner correctly notes that plaintiff has cited no medical evidence supporting the assertion that plaintiff's disability began, with a chronic cough, in October, 2004.

Plaintiff contends that the ALJ erred in relying on Dr. Linda Jensen's opinion that plaintiff became disabled as of August 1, 2005. He argues that Dr. Jensen arbitrarily relied on Ms. Matthews' cough to determine the onset date, while ignoring "the timeframe involved with the symptoms." This argument fails, because Dr. Jensen based her opinion concerning the onset of disability date on other symptoms as well, including fatigue and weight loss. Dr. Jensen noted that a lung biopsy in December, 2005, showed that plaintiff had lung cancer, and that in November, 2005, plaintiff complained of a history of chronic cough, fatigue, and weight loss. She also noted that Dr. Braich had indicated in August, 2005, that Ms. Matthews reported an overall good sense of well being and appetite, though she reported some fatigue. Dr. Jensen recommended fixing an onset of disability date of August 1, 2005, "3 months prior to the first mention" of both chronic cough and weight loss, because plaintiff reported that she was fatigued at that time. She added that there was insufficient evidence to support an earlier onset of disability date.

The ALJ's conclusion as to the date of the onset of Ms. Matthews' disability was supported by substantial evidence in the record, and should be affirmed.


2. ALJ's Residual Functional Capacity Finding

A claimant's residual functional capacity is the most a claimant can do, given her impairments and limitations. Social Security Ruling (SSR) 96-8p. The ALJ is responsible for determining a claimant's residual functional capacity, 20 C.F.R. § 404.1546. In assessing a claimant's residual functional capacity, the ALJ must consider the record as a whole, and must explain his or her analysis of the medical evidence and testimony. SSR 96-5p. No doctor's opinion is conclusive as to this issue. Id. In evaluating the ALJ's analysis, the issues

are whether the ALJ applied the proper legal standards, and whether the assessment is supported by substantial evidence.

Plaintiff contends that the ALJ erred in finding that Ms. Matthews could perform a full range of sedentary work before August 1, 2005. He asserts that Ms. Matthews' chronic cough demonstrated that she was disabled by lung cancer nearly a year earlier, and argues that the ALJ's residual functional capacity "was not endorsed by any physician of record." Plaintiff contends that Dr. Richard Alley, who stated that Ms. Matthews' impairment was not severe until November, 2005, could not be relied upon because, though he opined that Ms. Matthews' impairments were not expected to last 12 months, she instead died of lung cancer. Plaintiff adds that, at a minimum, Ms. Matthews' symptoms, which included chronic coughing, spitting blood, and fatigue, would have resulted in "non-exertional restrictions, such as environmental conditions" which the ALJ did not find.

These arguments fail. Contrary to plaintiff's assertion that no doctor of record supported the ALJ's residual functional capacity assessment, Dr. Alley, a non-examining physician, found that Ms. Matthews' lung cancer was not severe until November, 2005. Dr. Alley further determined that Ms. Matthews retained the capacity to occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds, stand and/or walk at least 2 hours and sit for a total of 6 hours in an 8-hour workday, and engage in unlimited pushing and pulling. Dr. Alley's residual functional capacity finding and assessment of Ms. Matthews' limitations were consistent with the conclusion that Ms. Matthews could perform a full range of sedentary work. 20 C.F.R. § 404.1567(a). Dr. Alley's recommendation that Ms. Matthews be found not to be disabled between April, 2002 and November, 2005, was based on his review of the record as a whole and the opinion of a

disability analyst who had reviewed Ms. Matthews' file in May, 2006, and had concluded that she could perform a full range of sedentary work.  That Dr. Alley was incorrect in predicting that Ms. Matthews' lung cancer would last less than 12 months does not mean that he was incorrect in his assessment of her residual functional capacity during the specific period in question here.  Plaintiff's treating physician, Dr. David Regan, indicated in June, 2006, that Ms. Matthews was recovering from lung cancer after radiation and chemotherapy treatments before unexpectedly worsening quickly.

Plaintiff contends that the ALJ erred in relying on the Medical-Vocational Guidelines (the Guidelines) to find that Ms. Matthews was not disabled during the period in question because non-exertional restrictions such as environmental conditions that should have been imposed precluded reliance on the Guidelines.  This argument fails because Dr. Alley did not assess any non-exertional limitations, and such limitations were not found in any other assessment in the medical record.

In setting out her assessment of Ms. Matthews' residual functional capacity, the ALJ cited the opinions of non-examining medical sources which supported the conclusion that Ms. Matthews could perform a full range of sedentary work before August 1, 2005.  The ALJ also correctly noted that the medical record concerning Ms. Matthews' functional limitations was "silent" between May, 2004, and the fall/winter of 2005, the relevant period at issue here. In addition, as discussed briefly below, the ALJ correctly noted that lay testimony concerning Ms. Matthews' impairments was "extremely vague" as to the times at which plaintiff experienced particular symptoms, including fatigue.

The ALJ's residual functional capacity finding was supported by substantial evidence, and was free of legal error.

FINDINGS AND RECOMMENDATION - 11

3. <u>ALJ's Reliance on Guidelines at Step Five</u>

        The ALJ's conclusion that, until August 1, 2005, Ms. Matthews could have performed jobs that existed in substantial numbers in the national economy, was based on the Guidelines. Plaintiff contends that the ALJ instead should have sought the testimony of a Vocational Expert, because Ms. Matthews had non-exertional limitations that precluded reliance on the Guidelines.

        This argument restates plaintiff's earlier argument that the ALJ erred in failing to find that Ms. Matthews had non-exertional limitations during the closed period in question. Like the earlier argument, this contention fails because the ALJ's residual functional capacity finding was supported by substantial evidence in the record and was not based upon legal error.

4. <u>ALJ's Assessment of Lay Testimony</u>

        Plaintiff contends that the ALJ erred in rejecting his testimony and the testimony of Ms. Brown, Ms. Matthews' sister-in-law, concerning the severity of Ms. Matthews' impairments during the relevant period. Plaintiff contends that the ALJ erred in failing to provide clear and convincing reasons for rejecting lay witness testimony supporting the conclusion that plaintiff was disabled as of October 1, 2004.

        This argument fails. The "clear and convincing" standard applies to the testimony of a <u>claimant</u> whose condition is capable of producing some symptom and for whom there is no evidence of malingering. <u>See</u>, <u>e.g.</u>, <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1993). Plaintiff here was not the claimant. He and Ms. Brown testified as lay witnesses, and their

testimony could be rejected if the ALJ provided "germane" reasons for doing so.  See, e.g., Dodrill v. Shalala, 12 F.3d 915, 919 (1993).

Here, the ALJ did not reject the lay witness's statements as to the ultimate severity of Ms. Matthews' symptoms.  However, she gave their statements "as to when symptoms were reported . . . little weight," and relied instead on "the contemporary treatment notes . . . ." The ALJ supported this assessment by noting that "the timeframes that both witnesses testified to were extremely vague in nature with inability to even state" when events that were important to the family occurred.  She also noted that plaintiff reported that his liver transplant had made it difficult for him to recall specific dates, and that Ms. Brown testified that most of her "knowledge of the claimant was through other people or 'hearsay' as she put it."  A careful reading of the hearing transcript supports the ALJ's assessment of the lay testimony, and her reliance instead upon the contemporaneous medical record was reasonable and fully supported.  The ALJ provided germane, legally sufficient reasons supporting her assessment of the lay testimony, and the decision of the Commissioner should be affirmed.

## Conclusion

A judgment should be entered affirming the Commissioner's decision and dismissing this action with prejudice.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due July 2, 2010.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

FINDINGS AND RECOMMENDATION - 13

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 15th day of June, 2010.


/s/  John Jelderks
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 14